May it please the Court, my name is Roger Perteaux, and I represent LN Management LLC, 31 Rue Mediterranean. This is an appeal from Judge Navarro's decision in granting a summary judgment motion, in this case granting the IRS a perfected lien over a HOA foreclosure lien and leaving a multimillion-dollar judgment pending. We have many issues in this case in terms of differences of opinion with the judge. We believe that the HOA lien was not, in fact, in coit. We believe the lien was invalid. We believe there was improper notice in the filing of the IRS liens. The procedural mandates of NRS 116 apply a foreclosure format, if you will, that makes the IRS lien as if any other IRS lien would be. You would have a lien against property. You would have a first deed of trust be secured. At the end of that sale, the excess proceeds would go to the IRS. In this particular case, there is excess proceeds for the IRS, and the statutory scheme works. So, I think we have to look to, and the federal case law is pretty clear, it basically says that we need to look to the state law to see what the claims were in the state law side to determine whether or not the status, if you will, of what the IRS can attach and whether or not it's in coit or not. Now, the statutory— Let me just stop you there in terms of how does that square with New Britain? You see, because I think the federal law determines when a state lien becomes coit, and you go through the four factors of Britain, and then you try to figure it out. You seem to have taken a different position. No, not at all. I think it's a mixed bag. I think that even in New Britain, they look at state law to see whether or not there's perfection. And under perfection, you look at 116, Your Honor. And under 116.3116, subsection 5, basically what it says is, and it's quite relevant, it says, recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claims of lien for assessment under this section is required. Essentially what matters is this. In 1991, in this case, and if I may take a moment, I know my time runs rapidly here, I may take a moment and give you the statutory scheme of 116. I think that lends light to where we're going. CCNR has set up, if you will, the HOA lien. The HOA lien is a springing lien that is perfected at the point it runs with the land in 1991. If we read on to that, however, if you go to 116.3116, now the IRS lien will tell you, and they've told us in their briefing, that the IRS lien is automatic, and it's an automatic lien that applies as soon as assessment applies. However, there's an exception to the rule. The exception says that it only applies in those cases as to security holders and purchasers upon filing of the notice, for example, in the Clark County Recorder's Office, the place where you'd file a notice. That occurs in this case on 1-5-10. Now, perfection under state law, and we look to the state law at least to establish perfection of the asset, and that is the case law in New Britain. So it goes on to say that if we're looking at 3116 subsection 1, it says the association has a lien on a unit for a construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305. Any assessment levied against that unit or any fines imposed against that unit's owner from the time of construction penalty assessment or fine becomes due. Sort of the same concept, if Your Honor would permit me, as the IRS is saying, that it's an automatic lien on their part as soon as there's been a deficiency determined in the assessment. Are you reading from the CCNRs? No, Your Honor. I was just quoting the statute. Okay. So one of the issues raised, maybe you can just clear this up for starters, I believe it was the IRS raised the issue that the actual CCNRs which you're pointing to are not in the record. Is that true? I did not have the underlying case, Your Honor, and as far as I understand, that is true. So the CCNRs were not a record? I believe they were not submitted in record. My question was this. If we were trying to march through to find out if it was co-aid or in-co-aid at what particular period and we didn't have the CCNRs that tell you what the provisions are, how would you fix the amount and other items if you don't even have those in the record? Two ways, Your Honor. First off, the CCNRs themselves are not in the record. The value of them being in the record, I'm not sure, is immensely relevant and I understand. But what I'm going to say is, what I mean by that is... You know, I've been doing this whole argument about something that's not in the record, so I mean, I'm a-looking and a-looking. No, what I mean by that, Your Honor, is there's nothing that from the CCNRs necessarily are going to be able to reduce this. The law says if the CCNR is on file, the HOA can proceed with their foreclosure lien. So we can look at 116 and say that the CCNRs, they can enforce their HOA liens from that basis. The record, however, does have the assessments that were due at the time of the filing of the lien, which were in excess of $2,100 on average, which would indicate, and which is a very simple step, it was $875 a quarter. So in order to get to $2,100, you'd have had to have almost a year, year and a half's worth of assessments, which would have taken it back into the early part of 2000, the latter part of 2008, 2009, when there was a sum due. Additionally to that, Your Honor, we... I do think it's kind of an odd situation, to tell you the truth, that if you have a case like this and you're saying that the lien is before the IRS filing, that you don't have laid out the quarters and the amounts, and that we're kind of extrapolating, is there somewhere you look in the record and you actually see this, and if there is, that would be helpful to know where? Yes, Your Honor. You can find that in the Notice of Delinquent Assessment. What number? Where is that in the record? I don't have it. I don't have the... I don't have that exact page. If the court wanted to give me a moment, I might be able to locate that. That would be helpful. I'm sorry?  I don't have the exact page, Your Honor, but I can cite you to what it says. It's the... For example, for a 29 rube mediterra, as of 1-18 of 10, there was $2,114.78 of unpaid HOA dues. As of 1-18 on 31 rube mediterra... Wait a minute. It goes back to my point. You basically have to say, well, it's close enough in time to the IRS lien that it had to have been... Given the amount, it had to have been prior. It's literally within days. Within days, but we don't actually have the evidence. It just seems like an odd strategy when you're fighting about a lien, that you wouldn't have had the specific assessments by date, and then we could say, well, they were actually before 1-510, and that wouldn't get you home free still, correct? Wouldn't we still have to walk through the other aspects? What we do have, Your Honor, is there's a statement in the Notice of Assessment of Delinquent Assessment that specifically states, for each quarter thereafter, the bill is $873, which would be the value of the quarterly assessment for the previous months. And it is an extrapolation, but... Yes, Your Honor. But maybe I missed it. Is that Notice of Assessment, is that recorded? Yes, sir. So it's recorded every... The Notice of Assessment... Every month, or... No, no, no. What happens is, the procedural posture of this is, the Notice of Assessment is a function of the first step of foreclosure. It's sort of like telling you that you have an opportunity to cure this debt problem. Here it is. It is the official recording that's required by statute. The next thing that happens after that, if they don't respond, if they don't make any payments, the procedure is, 30 days later, you get a Notice of Default. 90 days passes, you don't do anything about that, you get your Notice of Sale. The procedural posture of 116 operates very, very similarly, if you will, to a mechanics lien. Basically, what happens is, it's not in COET. It becomes a statutory lien based upon the CCNRs when they're filed, and that's a public record, in 1991. Immediately from a sum being due pursuant to the statute, they have a claim. Similar to that of the IRS, is assessment claim. It's not in COET, it's frankly very COET. We know who the lien or is. We know what the property is that we're attaching. We know what the sum is. And the sum does not have to be a sum certain, it has to be a sum calculable. And that comes from the Notice of Assessment. I'm afraid I'm out of time, I apologize. Alright. Any further questions? No. Thank you. We have one more piece of property, or several more pieces of property to hear from. May it please the Court. My name is Kerry Fauna, and I represent Lake Las Vegas Master Trust, also a part of this case, and it's a consolidated case. Your Honors, while you've talked about it, my issue that I'm going to address, I'm going to first adopt what Mr. Cruteau has said so far, as these are consolidated cases and they overlap. The issue I'm going to address with the Lake Las Vegas Master Trust, or Master Trust as I will refer to it, is regarding the notice of the tax lien. The issue here is a summary judgment motion. In a summary judgment motion, as Your Honors are aware, the standard is that all inferences and evidence should be viewed in the light most favorable to the non-movement, in this case the Master Trust. That's not what happened here. What we have is we have a notice of tax lien that was filed. That notice incorrectly named the taxpayer, although in their moving papers they clearly say the taxpayer is Z apostrophe S. They also say the elimination of the apostrophe is a minor variation. That is not the case here. That elimination, based on the indexing done by Clark County Recorder's Office, is actually quite significant, because what it did was it created not a small gap, but a 66,993 document gap between where, as my client researched to see if there was any recorded notices, where the lien would have been, had it been properly noticed, and where it ended up, without the apostrophe just a Z S. Furthermore, the fact of the matter is, the question of whether the search was adequate is a matter of credibility and evidence for a trier of fact, not at a summary judgment standard. What we have here is we provided evidence and testimony from my client in the form of a deposition and an expert who laid out the exact scheme of how the indexing of the notices work. As you are aware, the tax lien would be valid only to the point that a reasonable search would have discovered it. In this case, the government says, well, they should have looked because there were notices that said Z S, but that's not how the searching was done. The search was done where my client would look at the parcel number, he would find the titled owner, and he would search. In this case, the titled owner was Z apostrophe S. Mistakes in the notices are immaterial when the titled owner, by the way, researched. Furthermore, could I ask, what is the significance then of the fact that in some of the documents in the public record, including the lien for delinquent assessments, the corporation is listed as capital Z, capital S? But that was not, Your Honor, and I understand that. But the reality here is the actual titled owner, the mistake by the HOA in how they said the delinquent party was, is not what my client researched. He looks like that. Well, but he wasn't, he actually knew that. He may not be a researcher, but I understood from the record and then that he actually had found several documents in the public record with Z S. Well, he found the notices. Well, no, he found the notices. Okay, and the notices said what? The notices, on some of the notices, it did say Z S. And he didn't then search Z S? No, because when he searched the parcel number, the titled owner was Z apostrophe S. He had no reason to, at that point. Well, but it's the same, the notice of delinquent assessment went to that particular parcel, did it not? Right, but when you look at Z, if you find Z S, even if he had searched it, which he did not, did not search Z S, even if he had, it would have showed an entirely different address. As we note in our briefing, the corporation that actually, Z apostrophe S, had a Howard Hughes address and the Z S had a different address on Crimson. You're saying that is, he now knows that this delinquent assessment is some, it's listed as Z S. He's also thinking in his head, Z apostrophe S. But if he searched Z S, would he not find the IRS lien? That would be, there would be nothing to show that that was the same company because it had an entirely different address from the actual titled owner. And to just quickly, because I'm running out of time, we also have a professional title company that searched and didn't find it either. And I think that that weighs heavily in the adequacy of the search. Thank you. Thank you, Your Honors. May it please the Court, Paul Alulis on behalf of the United States of America. Starting from the most recent discussion and working backwards, Your Honors, I think that it is entirely relevant and important that in this case, the documents that were in the land record identified the taxpayer, the owner of the properties in question, as Z S or Z S, a corporation, without an apostrophe. And I think that this Court's prior decisions, including in the Kivel v. United States case, indicate that, armed with that knowledge, that the, any reasonable searcher would go forward and search those other names when they find those documents in the record. When there are land documents in the land record that maybe identify the owner of the property in a different way, the searcher is now charged with the duty to go and research that further and find out, are these other names used, are these other spellings that are used with respect to the owner of that property, so that they can then go and see, are there other liens that are applicable here? And I think it's undisputed on this record that had they done so, they would have located the notice of federal tax liens that had been filed. He then says, if you had done that, you would come up with the wrong address, and therefore, it would have been, in effect, useless to have done the alternative searches. I'm not certain about that, Your Honor, whether that's correct, but I think even if there had been a different address identified on those documents, it still puts the searcher on notice that these liens exist and on further inquiry notice to research and find out what is the existence of these, of the liens. I think that there's a duty to inquire further and not simply stop, and I think what happened here is that they stopped, frankly, at the index level. They didn't really go any farther. They simply said, well, Z apostrophe S doesn't locate anything, and for that reason, we don't have to go any further, and that's not a reasonable search, and I think And then, how would you determine if it's reasonable as a matter of law when he says, I had a title searcher do this, and they didn't come up with it either, and that's their specialty? So does that create an issue of fact? No, Your Honor, I think it does not, and I think, in fact, the 30B6 representative for the title company himself testified two things. First, he testified that a proper search should have been done for both Z apostrophe S and ZS, and that testimony is in the record at page 246 of the original excerpts of record. But then he also testified that there were two groups of title reports here. There was a preliminary title report and then a later title report. He testified that the preliminary title reports did indicate the existence of some Federal lien interest in the property, and that is at the excerpts of record  So the preliminary title report showed the lien? It did not specifically show the exact liens, meaning the dates of the filings, all of that complete information. That was included in the later supplemental reports. But there was an entry. Because it's a preliminary title report. I'm not sure what the reason why, Your Honor, but he testified that there were entries in each one of those preliminary reports that indicated that there was a right of the United States to redeem a property. And it did not specifically identify the tax liens, but it did identify that right. And his testimony in the deposition was that that notation in the preliminary report showed the right of the IRS showing the tax lien. It doesn't show the actual tax lien. That seems to be the reason the amendments were done to add that tax lien. And so I think that on this record, there really is no dispute of fact at all. And as a matter of law, the district court was completely within the bounds of appropriate summary judgment to determine that as a matter of law, a reasonable search would have identified these tax liens. Now, going back to the earlier discussion that the Court was asking about with respect to the co-eightness of the HOA association liens, I think that there's an important point to be made here with respect to even if the HOA liens here had been superior to the Federal tax liens, which they were not, I think, which we demonstrate in our brief for numerous reasons, not the least of which is the co-eightness problem and the inability to identify the amount of the lien and when that amount of that lien was fixed. But even more fundamentally, I think the reason why the appellants here want to argue about the primacy of the HOA liens is because they want to forward their argument that under Section 7425 of the Internal Revenue Code, the Federal tax lien was stripped through the HOA sale. And that is not correct. Not only because the HOA lien was not superior to the Federal tax lien, which it must be in order to have any stripping effect under Section 7425, but also because the record is completely devoid of the requirement under Section 7425 that specific notice be given to the Internal Revenue Service before that statute will have the effect of stripping any lien. And that notice requirement is extremely specific. It's not any kind of generalized notice about a potential sale of a property. It's specific about the timing. It's specific about the manner. It must be a written notice. It must be by registered or certified mail. And it must be sent to a very specific individual within the IRS, and that person is identified in a publication by the IRS. And all of that is written out in the regulations under Section 7425. In the Code of Federal Regulations, it's Title 26, Section 301.7425. And the notice to the IRS must contain very detailed information about the liens that may be stripped through the sale, including the location of the property, the amount of the lien that's being foreclosed. And it must identify the specific Federal tax liens that can be affected by the sale. It's your point that you wouldn't need to figure out whether they were superior? Correct, Your Honor. Because even if they were, this particular IRS procedure has not been fulfilled? Correct. The liens were not stripped through the HOA sale, even if the HOA liens were superior. Now, in this case, they weren't superior for a number of reasons. And I think the one reason that the Court was getting to earlier is the problem with co-eightness. And in this case, there is a serious problem in whether the HOA lien satisfied the Federal test for whether the lien was co-eight. And again, the Court is correct that the test is a Federal question. The test is not whether, under State law, that earlier State lien has been perfected. The question is whether it satisfies the Federal test for co-eightness, meaning that the identity of the lien or the identity of the property, the amount of the lien. Okay. So do we have the identity of the lien or? Well, Your Honor, there's no indication in the record that any of those elements were established prior to the Federal tax lien attaching to the property in September of 2009. So there is no evidence in the record that there was any HOA lien in this case that attached to any property at question here. But you do have, within days, the fixed amount, which under the other evidence in the record, if you extrapolate, would mean that there were some lien prior to 2010, correct? Well, Your Honor, no, I don't think that that is correct. First, the first notice of lien that the HOA filed in this case was filed on February 16, 2010, and that's in the record at page 213. A month plus after the IRS. Correct. And what it says is that as of January 18, 2010, there was an amount due. That's also a date after January 5th. Now, there are many things that could be assessed against that property other than ongoing monthly assessments. There could be fines. There could be penalties. There could have been a special assessment. From this record, it is not possible to say that there was an amount owing prior to January 5th, 2010. I think even if the Court were to do the extrapolation that appellants are inviting it to do, that still would not suffice, because for Federal co-eightness purposes, the amount needs to be fixed. And in this case, under Nevada law, the amount is not fixed at that time. Even at the time that it's assessed, despite the fact that the law states that the lien attaches at the time that an assessment is made, the amount due really does not become certain for many months after the assessment is due. And under Nevada revised statute, which counsel cited earlier, section 116.31162, a number of steps must be taken. It's a lot of letters or numbers. It's true, and it gets worse. It's Nevada revised statute. It must be an IRS or Nevada statute. No, it's the Nevada, exactly, 116.31162. A number of steps must take place before the lien can not only be foreclosed, but before even the amount of the lien can be finally determined. And that's because under that statute, once an assessment is made, the homeowners association is required to send a notice before it can proceed to foreclose the lien. It must send a notice to the homeowner or the landowner of the assessment that's due. And in that, there are three things that are required in that notice. It must mail a schedule of fees. It must mail a proposed repayment plan. And it must mail a notice of the right of the property owner to contest the obligation at a board hearing before the homeowners association. And that is Nevada revised statute 116.31162.4. There's a Nevada statute that basically says the lien arises upon when it's due. So you could still have a lien, but you just maybe can't foreclose on it immediately. So then it gets into that word summarily that comes up. But if you take the first Nevada statute he referenced, and now you have this Nevada statute, does one necessarily overtake the other? These are both part and parcel. They're the same statute. These are different sections of the same statute. The first part of that statute says the lien arises in effect automatically, correct? When it's due and not paid. Well, as a matter of state law, that is what it says, that the lien arises automatically. That does not answer the federal co-eightness question, which contains all of these elements. And I think, and what I'm trying to get to is that in particular, the amount of the lien, even under that Nevada law, is not set until a much later date. And again, because the homeowners association must allow the property owner an opportunity to contest the amount due only later, after that process plays out, at least 30 days later, if there's been a hearing before the association or if the homeowner does not seek one. Then, after that, the homeowners association may mail a notice of delinquency. But if you, let's say that your monthly fees are 400, so it becomes an automatic lien, you don't pay. If you had to figure out what the actual lien was, because there's probably interest and a late payment fee and a lot of other things that typically go into failure to pay your homeowner's fees, would you need the CC&Rs to figure that out? Well, I think you would, Your Honor. And as you pointed out earlier in the argument, those documents are not in the record at all. So there's no way to consult those to find out how these assessments arise, what fines, what penalties, what other things may come into play here. That brings up an interesting point. You remember in law school, we learned about something called wild deeds that just spring up out of nowhere. If you have a CC, if there are CC&Rs but the CC&Rs are not recorded, where would this notice of lien, where would one go to look to see whether or not this, in fact, was a proper lien or, say, a wild deed, for example? Well, Your Honor, I don't know the answer to that. I think that's a very good question. And I think, you know, one of the concerns that plays out in these lien cases, you know, under most circumstances takes precedent even without notice. And part of the reason for that is that the Federal Government is incapable of deciding whether or not to become a creditor of a taxpayer, right? Like the taxes are due from a taxpayer, and whether they're paid or not is not something that the Government has control over. And so it's very important for purposes of the Treasury to protect the Federal interest in having the taxes paid timely. And that's what the Internal Revenue Code system seeks to do. And I think in this case, and particularly the argument that's presented here, arguing that, in fact, the filing of the CC&Rs all the way back in 1991 automatically primes Federal tax liabilities that are due 10 years later, simply can't be the case and it can't be squared with the scheme that Congress has put in place. If the Court has no further questions, I see that my time's expired. Thank you. Thank you. I think you used up all your time, but I would like to give you a minute for rebuttal. Thank you so very much. A couple of real important comments. First off, the CC&Rs are not going to direct you to what the monthly assessments are. The CC&Rs direct the Board to do a budget and calculate the monthly assessments. But they would if they were recorded in the first place. If they were recorded so that parties would be able to see it and find it on the record, it would then give you or lead you to the fact that the notice of assessment was being record title or a record interest in the property, right? Your Honor, the CC&Rs are recorded. They're always recorded. 116 is a common interest ownership statute. You only get to 116 if you're a homeowners association within the state of Nevada. This is the operative statute in which to foreclose and collect assessments, and it's the operative statute that controls. Maybe I misunderstood you, but I thought my notes indicate that you said that the I did not. I said they weren't in this record. Okay, all right. They're recorded with the county recorder's office. And just one thing, the assessments, you would not look at the CC&R and figure out what your monthly assessments are. It's not going to happen. What is going to happen is under the SFR case, our situation is 100% as if we're foreclosing a deed of trust. 116 provides for the HOA lien to be foreclosed as a deed of trust. You cannot supplant a deed of trust with a judgment creditor like the IRS. That's the problem. You have, if No, but if you foreclose it like a deed of trust, then you have all the items that he said. You've got the notice and this and this and this. But it's been done. Pursuant to the 116 But we don't know about that. The only timing we know about is it took place afterwards, correct? No. 116 says the recitals in the deed provide that everybody received notice. His argument on notice was never presented in his brief, but the notice requirements, there's a recital that gets conclusive presumption that it was done, is that all notices were properly provided to all parties. Okay, so from that perspective, that's what 116 says. You have a statutory scheme that sets up the HOA lien to be equivalent to that of a mortgage, a deed of trust, and it predates the original first deed of trust. That's the only way that the first deed of trust could be wiped out, if you will, from a foreclosure sale if you don't pay the nine-month super priority payment. But a deed of trust references a note and a note has an amount.  Right, but the CC&Rs don't state an amount, right? But the CC&Rs will not provide you the amount. I understand that, but you were trying to draw the analogy between the deed of trust. A deed of trust references a note. The note has an amount. In fact, a deed of trust will state the amount, right? So it seems to me those two are not comparable. I'll give you an analogous argument. Okay. The analogous argument is you can show me a deed of trust and it's going to tell me what the monthly note is. It's not going to tell me whether they did impounds. It's not going to tell me whether or not they paid taxes for you. It's not going to tell me whether or not you have attorney's fees. Those are all ancillary ads. The statutes and the case law is very simple. You don't have to have a specific number. You have to have something that you can ascertain. And you have to be able to calculate it and get to the number. You have to simply have noticed that it exists. It is a number and it was predated the IRS lien. All right. I think we have your argument well in mind. Thank you very much. Thank you to all counsel this morning. L and management versus the IRS is submitted. We'll next hear argument in Morales versus the United States.
judges: Fernandez, McKeown, Benitez